ANGER *v.* GRENADA BANK.*

(Division B. Dec. 22, 1924. Suggestion of Error overruled Jan. 3, 1925.)

[102 So. 274. No. 24487.]

MORTGAGES. *Deed of trust grantor held entitled under agreement to have evidence of debt canceled, though property bid in at foreclosure for less than debt.*

Where the holder of a deed of trust which is about to be foreclosed has an agreement with a third party, by which the holder of the deed of trust agrees not to bid at the sale if the proposed purchaser will agree to assume to the holder of the deed of trust the full debt secured by the deed of trust, and such bidder bids the property in for less than the amount of the debt, and assumes to the bank the full amount of the debt in pursuance of said agreement, the grantor in the deed of trust is entitled in such case to have the evidences of his debt canceled and surrendered to him.

---

*Headnote. Mortgages, 27 Cyc., p. 1788.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.

Suit by W. H. Anger against the Grenada Bank. From judgment for defendant, plaintiff appeals. Reversed in part, and affirmed in part.

*W. E. Hobbs* and *H. C. Mounger,* for appellant.

The first assignment of error is to the action of the court in overruling the demurrer of the appellant to

the cross-bill of the defendant. That demurrer is that the cross-bill sets up new and independent facts and raised new and distinct issues and embraced' other indebtedness than those named in the original bill, and are not such matters and things as can be properly made the subject of a cross-bill in this suit. *Gilmer* v. *Felhour,* 45 Miss. 627; *Wright* v. *Frank,* 61 Miss. 32; *Fletcher* v. *Wilson,* Freeman's Chancery, 376, 391; *Stansel* v. *Hahn,* 96 Miss. 616, 50 So. 696; 21 C. J. 508-9; *Magruder* v. *Hattiesburg Trust Co.,* 108 Miss. 857; *Valentine* v. *Mc-Grath,* 52 Miss. 112; *Thomason* v. *Neeley,* 50 Miss. 310.

The second assignment of error is to the action of the court in overruling the objections of the appellant to certain testimony. 1. To the introduction of the deeds of trust recorded in Deed Book Y-5, p. 4; U-5, p. 561; N-3, p. 121; T-5, p. 183; Y-5, p. 8, and the indebtedness secured thereby, for the same reasons as are alleged in the demurrer. They were in no manner germane or relevant to the controversy, and should not have been admitted. These matters did not throw any light on the issue made by the original bill, and tended only to confuse the issue. 2. To the introduction of the charter and by-laws of the Grenada Bank as incompetent and irrelevant, and because further said charter and by-laws are not recorded in Sunflower county, Mississippi. This charter and these by-laws were not public records, but were private records of the Bank of Grenada. The appellant was not charged with any notice thereof, and they were *res inter alios acta.* The appellant was not a party to them, and was not bound thereby. Moreover, the statutes require that this charter should be recorded in Sunflower county. Section 4017, Hemingway's Code; Section 900, Code of 1906.

It will be seen that the trial of this case traveled far beyond the issue made in the original bill, and dragged in a vast mass of extraneous, incompetent and irrelevant matters, which threw no light on the controversy, did not affect, but tended only to confuse the issue. Evident-

ly the case was not tried on the real issue. The bank would be estopped to set up title in this property. If it has any rights the complainant is entitled to them. If Harrison was buying for the bank, this title cannot be set up against complainant. If the bank has no title now, still it perpetrated a fraud on the plaintiff by which he lost the property. The bank is liable for the fraud and misrepresentation. *Cocke* v. *Kuykendall,* 41 Miss. 65; *Tobin* v. *Allen,* 53 Miss. 567; *Higgins* v. *Haberstraw,* 76 Miss. 634; *Albert Mackie & Co.* v. *Dale,* 84 So. 453; *Moore* v. *Crump,* 84 Miss. 613; *Benbrook* v. *Yancy.* 96 Miss. 536; *Dickson* v. *Green,* 23 Miss. 612.

The chancellor did not think that the cashier and the director Harrison, had any authority to bind the bank. Gardner was the assistant cashier; and of course, was the cashier for this branch bank as far as the public was concerned. He had been entrusted with the foreclosure according to his own testimony. The appellant cannot be affected by an secret instructions given Gardner by the president. *Grenada Bank* v. *Moore,* 95 So. 449; *Williamson* v. *First National Bank,* 90 So. 115; *Boyd* v. *Appelwhite,* 121 Miss. 879; *Pennington* v. *People's Bank,* 95 So. 694; *Fleckner* v. *Bank of the United States,* 8 Wheat. 388, 6 S. & M. 234; *Carey* v. *Cain,* 70 Miss. 628, 13 So. 239; *Metzger* v. *Southern Bank,* 54 So. 244, 98 Miss. 108.

The admission or declarations of an agent, when made at the time of doing an act in the execution of his authority, are binding on the principal. *Belmont Coal & R. Co.* v. *Smith,* 74 Ala. 206; *A. G. S. R. R. Co.* v. *Hill,* 78 Ala. 303. But to render the declarations or admissions of the agent evidence against or binding on the principal, they must be explanatory of some contemporaneous act within the scope of his authority, or must be made while in the execution of the agency, forming a part of the *res gestae.* 1 R. C. L. 508; *D. J. Meador & Son* v. *Standard Oil Co.,* 72 So. 34; 3 R. C. L. 451; 12 A. R. 72.

The inadequacy of the price is an important feature in this case, taken in connection with all the circum-

stances. Why there were no bidders has been explained before. Inadequacy of consideration is not alone conclusive of evidence of fraud, but taken in connection with the other circumstances, may be very strong evidence of fraud. *Martin* v. *Swofford,* 50 Miss. 328; *Dunton* v. *Sharpe,* 70 Miss. 864; *Elmslie* v. *Mayor,* 35 So. 202; *Weyburn* v. *Watkins,* 90 Miss. 735; *Mitchell* v. *Harris,* 43 Miss. 325; *Patterson* v. *Josselyn,* 43 Miss. 382; *Allen* v. *Martin,* 61 Miss. 86; *McPherson* v. *Davis,* 96 Miss. 224; 19 R. C. L. 584; 19 R. C. L. 613.

In conclusion, here is a case where a man's property is sold several years before the principal indebtedness is due and sold because of the non-payment of the interest, when no interest was due. When he had two thousand dollars to his credit in the bank, which should have been applied to the payment of the interest, both because the interest was due, and the principal was not due. Section 2079, Hemingway's Code, section 2681, Code of 1906 provides: "When partial payments are made, the interest that has accrued to the time of payment, if any, shall be first paid, and the residue of such partial payment shall be placed to the payment of the principal." *Brooks* v. *Robinson,* 54 Miss. 272.

*D. M. Quinn* and *Forrest G. Cooper,* for appellee.

The attorneys for appellant first complained of the action of the lower court in overruling their demurrer to the cross-bill filed by the Grenada Bank. No relief was granted under this cross-bill and it is hard to conceive how the appellant was injured by the cross-bill, even were we to concede that the cross-bill was improper. This is not a suit to set aside a void foreclosure for fraud or deceit. It does not involve merely the foreclosure of one trust deed. It is a suit for damages by the appellant arising out of the alleged handling of real estate held by the Grenada Bank as security and a mere reading of the bill, answer and cross-bill will show that

the matters mentioned in the cross-bill are germane to the question considering the amount of damages, if any, or a reduction in the amount of damages the complainant would have recovered if entitled to recover anything. 34 Cyc. 644. It is not necessary to show equity in a cross-bill. *Thomas* v. *Neeley,* 50 Miss. 310; 21 Cyc. 644. If the cross-bill is predicated on a demand which grows out of the same subject-matter involved in the original bill, it is proper. *Dewees* v. *Dewees,* 55 Miss. 315; *Schaff* v. *Kahn & Bernstein,* 83 So. 622, 121 Miss. 412; *Irion* v. *Cole,* 78 Miss. 132, 28 So. 803.

The appellant next complains because the court permitted the appellee to introduce several deeds of trust showing indebtedness owing to it by the appellant. In every one of these deeds of trust the appellant had conveyed as security the property, or a part of the property involved in this controversy, although in one of them additional property was involved. Since the appellant is seeking to recover damages because of profits which the appellee is claimed to have made in this property, then these deeds of trust were entirely proper and necessary. In addition they were the backbone of the case as made out by the cross-bill. If the cross-bill was proper then these deeds of trust were proper, but even if the cross-bill was improper, still the introduction of these deeds of trust was proper because when a man is seeking to recover damages on a real estate transaction, evidence of indebtedness owing on the same property by the party seeking damages is admissible.

The appellant contends that the charter and by-laws were inadmissible because the appellant was not a party to them and was not bound thereby. Our answer as to the charter is that it is a public record, being recorded in the office of the secretary of state and likewise in the county in which the Grenada Bank is located. This is a suit against the Grenada Bank and not the Bank of Moorehead, a branch. The Grenada Bank is domiciled in Grenada county and a certified copy of charter and

amendments from Grenada county was offered.  As to both the charter and the by-laws, we wish only to say that this is a case wherein the Grenada Bank is sought to be held because of certain alleged acts and conduct of an assistant cashier of a branch bank and a director. Since these officers obtain certain of their authority from these documents they were admissible for what they were worth.  The appellant argues that the charter would only be admissible if recorded in Sunflower county but, as we read the statute, it is only necessary to have it recorded in Grenada county.

Appellant next contends that error was committed in allowing testimony as to the application of the two thousand dollar payment made by Anger out of a part of the purchase price of property sold to W. D. Corley. In our statement of facts we showed that Anger or his attorney gave no directions as to the application of this payment, but the Grenada Bank did actually apply the payment to the principal. This the bank had a right to do because when a debtor pays money to a creditor and does not direct as to which debt it should apply, the creditor has the right to make the application himself. *Dennis* v. *McLaurin,* 31 Miss. 606; *Crisler* v. *McCoy,* 33 Miss. 445;  *Champenois* v. *Fort,* 45 Miss. 355; *May* v. *Taylor,* 62 Miss. 500;  *Turner* v. *Osborn,* 106 Miss. 737, 64 So. 721;  *Tonkel* v. *Shields,* 87 So. 646.

Counsel for appellant complain because J. B. Hughes was permitted to testify on the theory that he had been previously approached by Mr. Anger with regard to employment in this case.  The next question raised is as to the competency of the testimony of J. B. Hughes, because the conference took place after the sale.  As we understand the rule, when fraud is charged it is entirely proper to show all of the acts and conduct of the party charged with fraud, which will shed light on the issues. 27 C. J. p. 50, sec. 181.  We submit that when fraud and deceit is charged and sought to be proved then all acts and conduct of the parties who are charged with fraud

in connection with the controversy here before or after should have been admitted. 27 C. J., p. 50, sec. 191.

The attorneys for the appellant state that the chancellor decided this case for the appellee solely on the ground that the cashier and director had no authority to bind the bank with any promises to convey any assets of the bank. There is nothing in the decree to justify this statement. Opposing counsel in their argument attempt to make of the cashier a higher officer than the president and it seems than the board of directors. They made the direct statement that he is a higher officer than the president. *Bank* v. *Leeton,* 95 So. 447. ''The office of the cashier is strictly executive. In the absence of expressed authority from the board of directors, he can only perform the daily routine business of the bank. To state his position correctly, he is the executive agent of the board of directors. The leading authorities hold that beyond the ordinary business of the bank his acts must be authorized and directed by the board of directors, but his duties may be defined by the by-laws.'' Magee on Banks and Banking (3 Ed.), p. 156.

A public which deals with a cashier in regard to the sale of real estate does so at its peril. It is up to the public to find out if the cashier has that authority, because that is a matter not usually in his scope The public must inquire by what authority he is presuming to act in a matter usually confined to the board of directors. No one dealing with a mere cashier or a single director in regard to disposition of real estate can presume on his authority. They must find out by what right he is trying to deal with the bank's real estate. 7 C. J. 551, 552; 556; *Payne* v. *Commercial Bank,* 6 S. & M. 24; *Citizens Bank* v. *Waddy Bank,* 128 A. S. R. 282, 11 L. R. A. (N. S.) 598; *Martin* v. *Webb,* 110 U. S. 7, 3 S. Ct. 428; *Carlisle* v. *Gresham,* 21 A. M. R. 49; *Kissam* v. *Anderson,* 145 U. S. 435, 12 S. Ct. 960, 36 L. Ed. 765; *Moore*

*State Bank* v. *Forsuth,* 28 L. R. A. (N. S.) 501; ·*Gloster Bank* v. *Hindman,* 95 Miss. 742, 50 So. 65, 1912 A. Ann. Cas. 93; *Holt* v. *Bacon,* 25 Miss. 567, 23 Am. Dec. 728; *Bryant* v. *Bank of Commerce,* 95 Wis. 476, 70 N. W. 480; *Wilkin-Hale Bank* v. *Herstein,* 149 Okla. 1109, 7 C. J. 561; *State* v. *Commercial Bank,* 6 S. & M. 218, 45 Am. Dec. 280; *U. S.* v. *Columbus,* 16 L. 'Ed. 150; *Bank of Jeanerette* v. *Druilhet,* 89 So. 674, (La.); 7 C. J. 549, par. 160; 7 C. J. 566; *U. S.* v. *Columbus City Bank,* 21 How. 356, 16 L. Ed. 130; *Greenawalt* v. *Wilson,* 52 Kan. 109; *State Bank* v. *Forsyth,* 108 Pac. 914, 28 L. R. A. (N. S.) 501; *Spongberg* v. *First National Bank,* 31 L. R. A. (N. S.) 737.

If a cashier has no such authority to bind his principal, of course, a director acting alone would not have any such authority. No one director, unless especially authorized by the board of directors, can bind the bank by any promises. *Harper* v. *Calhoun,* 7 Hos. 203.

Even if promises were made and were within the scope of the agent's authority, is the bank bound by such promises? 26 C. J. 1087, par. 25; *Peacock* v. *Wilkinson,* 51 S. C. 319; 26 C. J. 1096.

Argued orally by *H. C. Mounger* and *W. E. Hobbs,* for appellant, and *F. G. Cooper,* for appellee.

ETHRIDGE, J., delivered the opinion of ·the court.

The appellant filed his bill in the chancery court against the appellee, seeking an accounting for certain profits made by the appellee on sales of property under deed of trust given by the appellant to the appellee. It is alleged in the bill: That the appellant gave a deed of trust to the appellee for certain moneys for the purchase of certain property, and that thereafter the appellant sold a portion of the property to one W. L. Corley; a part of the purchase money in the sale to Corley being applied on the indebtedness to the bank.

The note to the bank given by the appellant would
mature on October 15, 1924, and bore interest at six per
cent., payable annually. That thereafter Corley moved
away, and that the bank desired to eliminate Corley from
the transaction, and that it was considered by the bank
that the most efficacious way to do so would be to fore-
close. The appellant alleged: That the bank promised
to reconvey to him the property, if it purchased the same
at said sale, and that an arrangement was made between
the said bank and one W. L. Harrison, by which
Harrison was to purchase the said property, as it was
agreed by Harrison and the cashier of the Moorhead
branch bank, which was a branch of the Grenada Bank,
that the property would be reconveyed to the appellant,
and that he would be allowed to carry the indebtedness
with the said bank. That by virtue of said understand-
ing and agreement the appellant was induced to become
inactive and to acquiesce in the said foreclosure; he being
assured that he would be protected in the said matter.
That thereafter the deed of trust was foreclosed and the
property was bought in by Harrison for sixty five hun-
dred dollars; the amount of the debt to the bank being
around sixteen thousand dollars. That the complain-
ant understood that Harrison was bidding for the bank.
That immediately after the foreclosure sale complainant
called upon and demanded of the said defendant and
the said Harrison a reconveyance of said property in
accordance with the said understanding, but the bank
and its agent, Gardner, and Harrison, put the complain-
ant off at that time, saying that they were busy, and
would attend to the matter in a short time. That com-
plainant made several other demands upon the defend-
ant, requesting it to comply with its promise, but, after
putting off the complainant several times, the said de-
fendant in defiance of its said promises so to do refused
to reconvey the said property to the complainant, but
afterwards sold said property to other persons at a
sum totaling nineteen thousand three hundred dollars.

It is further alleged that nothing was due under the deed of trust as principal until October 15, 1924, and that the interest had been paid in advance for a great time. Complainant prayed that defendant be required to account to the complainant for the said profits, and to pay the same to the complainant, and, if mistaken, to grant other and appropriate relief. Copies of the deeds of trust are made exhibits to the bill.

The bank answered, denying the said agreements, and denying any promises to the complainant, and set up that it had acquired certain other liens by virtue of the default in the payment of taxes and interest, and also set up other and separate deeds of trust given by the complainant to the defendant covering, in part, the property sold under the deed of trust.

The appellant introduced considerable proof to sustain his contentions, and the appellee introduced considerable proof to sustain its contentions, and as to most of the features of the litigation there was a dispute in the testimony. The chancellor dismissed the bill.

There is one feature of the litigation that seems to be without dispute, and that is it was agreed between the Grenada Bank and Harrison that, if Harrison would bid for the said lands at the trustee's sale, and would agree to pay the bank the full amount of Anger's indebtedness under the deed of trust, the bank would let him have the money to handle the transaction, and would not bid at the sale, and that Harrison could have whatever profits he could make out of handling the transaction.

The appellee's brief in the statement of facts on this point contains the following statement:

"In those days of financial distress the Grenada Bank, as well as all other banks, was compelled to seek the liquidation of their loans or the placing of them on a better security basis in order to meet their obligations. In accordance with their policy, the Grenada notified Mr. Anger in effect that he would be compelled to make

a substantial payment on his indebtedness or put up additional security because the bank was unable to carry it on its then basis. Nothing was done, and on January 4, 1921, at a time when Anger had given several deeds of trust to the bank, the bank decided that the simplest way to foreclose would be to foreclose only one trust deed, which was the first one. The bank building and country property were advertised on that date, and were sold on January 29, 1921, by the trustee, and purchased by W. L. Harrison for sixty five hundred dollars. Including the amounts which the bank had to pay, such as the prior mortgage, taxes, and insurance, the total indebtedness of W. R. Anger to the bank was around sixteen thousand seven hundred dollars. Prior to the foreclosure, in view of the unsettled business conditions and the almost certainty that there would not be other bidders, an arrangement was made with W. L. Harrison that if there were no other bidders W. L. Harrison was to purchase the property, and the bank was to loan him the money with which to make the purchase, but Harrison was to execute to the bank his note and trust deed, securing the whole amount of Anger's indebtedness. There were no other bidders at the sale, and this arrangement was carried out. Subsequently the two pieces of property were conveyed by two credit sales to other parties by W. L. Harrison. After the sale the only interest which the Grenada Bank had in the transaction was that W. L. Harrison was largely indebted to the bank for the money loaned to make this purchase.''

Both Mr. Thomas, president of the Grenada Bank, and Mr. Harrison, in their testimony agree substantially with the statement of these facts contained in appellee's brief above set out.

The property was bid in by Harrison for sixty five hundred dollars; there being no other bids but Harrison's. He thereupon executed his obligations to the bank for the amount of Anger's debt, and afterwards

sold the property at the sum above stated. It will thus be seen that, by virtue of the agreement between the bank and Harrison, the bank secured the payment of Anger's debt to it by taking the obligations of Harrison which the president of the Grenada Bank testified were perfectly good, even without a deed of trust.

It is manifest from the record that the bank would not have permitted the property to have been bought for less than the amount of its debt except on the condition it entered into with Harrison. The bank, having obtained full satisfaction of its debt from Anger, should have surrendered to Anger his paper marked canceled and paid, and, as it did not do so, on the facts in this record the court should have granted Anger relief to this extent.

As to all the other controversies there was such dispute of facts as would authorize the chancellor to decree as he did. But it was error not to grant relief to the extent above indicated. As to this extent the judgment will be reversed, and judgment entered here directing the cancellation of the notes and deeds of trust of Anger to the bank under which the foreclosure was had. In all other respects the judgment of the court below will be affirmed.

*Reversed in part; affirmed in part.*